UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

HERSHEL WOODROW
"WOODY" WILLIAMS,

      Plaintiff,

v.

BRYAN MARK RIGG, and
JOHN DOE PUBLISHING COMPANY,

      Defendants.

CIVIL ACTION NO.:   3:19-cv-00423

Judge _____

## VERIFIED COMPLAINT

Hershel Woodrow "Woody" Williams (hereinafter sometimes referred to as "Plaintiff" or "Mr. Williams") by and through counsel, Dinsmore & Shohl LLP, for his Verified Complaint against Bryan Mark Rigg (hereinafter sometimes referred to as "Defendant") alleges, on knowledge as to his own actions, and otherwise upon information and belief, as follows:

### PARTIES

1.      Plaintiff Hershel Woodrow "Woody" Williams is a resident and citizen of West Virginia and currently resides in Ona, Cabell County, West Virginia. As of the date of filing of this Complaint, Mr. Williams is ninety-five (95) years old.

2.      Upon information and belief, Defendant Bryan Mark Rigg is a resident and citizen of Dallas, Texas.

3.      The true capacity, whether individual, association or otherwise, of defendant herein as John Doe Publishing Company is unknown to Mr. Williams, who therefore sues said defendant by such fictitious name. Mr. Williams is informed and believes, and based thereon

alleges that the defendant designated herein as Doe is or may be responsible in some manner for the occurrences herein alleged. To the extent that the identity of John Doe Publishing Company is later determined, and it is necessary and/or appropriate to join it as a party defendant herein so that the Court can grant full and complete relief to Mr. Williams, he will seek leave of the Court as required to amend his Complaint accordingly.

## JURISDICTION AND VENUE

4.      For purposes of this Court's jurisdiction pursuant to 28 U.S.C. § 1332, Mr. Williams is a citizen of the State of West Virginia and Defendant is a citizen of the State of Texas.

5.      This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332, because the action is between citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6.      This Court has personal jurisdiction over Defendant because he has purposefully engaged in conduct directed at the State of West Virginia and has purposefully availed himself of the laws of the State of West Virginia. In connection with the events set forth herein, the Defendant has transacted business with Mr. Williams in West Virginia and entered into a contract for services in West Virginia as described herein. The Defendant also travelled to West Virginia on multiple occasions in furtherance of his business and contractual relations with Mr. Williams.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial portion of the events or omissions giving rise to the claims alleged herein occurred within the geographic bounds of the United States District Court for the Southern District of West Virginia.

2

## FACTUAL BACKGROUND

8.  On October 5, 1945, then President of the United States Harry S. Truman, by and on behalf of the United States Congress, presented Mr. Williams with our nation's highest award for valor in action against an enemy force, the Medal of Honor.  As the supporting citation indicated, Mr. Williams was awarded the Medal of Honor "[f]or conspicuous gallantry and intrepidity at the risk of his life above and beyond the call of duty…in action against enemy Japanese forces on Iwo Jima, Volcano Island, 23 February 1945."

9.  Mr. Williams is one of three living veterans to whom the Medal of Honor was awarded for service to the United States in World War II, and is the only living recipient to have served during World War II in the United States Marine Corps and in Pacific Theater of Operations.

10.  In 2015, Mr. Williams accompanied other veterans on a tour of Guam and Iwo Jima, returning to these locations for the first time since the end of World War II. During that trip, Mr. Williams first met and became acquainted with the Defendant.

11.  Mr. Williams subsequently had several conversations with Defendant about the possibility of collaborating with Defendant to compose and produce a book that would contain Mr. Williams' biography and would capture and illustrate Mr. Williams' life in general, as well as his specific personal experiences as a World War II United States Marine Corps veteran and Medal of Honor Recipient.

12.  In or about July of 2016, Defendant visited West Virginia and met with Mr. Williams and his family to gather basic details and information about Mr. Williams' personal life. During this time, Defendant travelled with Mr. Williams to various locations in West

Virginia including but not limited to Mr. Williams' hometown of Quiet Dell, West Virginia, as part of their anticipated joint collaboration in preparing a book about Mr. Williams.

13.    In or about February of 2017, Defendant returned to West Virginia to meet with Mr. Williams (and his representatives) to discuss and agree on the terms of their collaboration, and pursuant to which the book would be written. Specifically, on February 12, 2017, Mr. Williams and members of his family met with Defendant at the Holiday Inn hotel in Barboursville, West Virginia for several hours, during which time Mr. Williams and Defendant specifically agreed as follow:

   a) Mr. Williams would provide Defendant with personal information about his life and his military service;

   b) Defendant would conduct research as necessary for the book and prepare a draft manuscript of the book;

   c) The information contained in the book would be factual as it related to Mr. Williams;

   d) Mr. Williams, along with the Defendant, would have input into, and authority over, the text and content of the book; and

   e) Mr. Williams and Defendant would share equally in any proceeds from the book.

14.    From the outset, both Mr. Williams and Defendant agreed and understood that the book would be unique, and the first of its kind relative to Mr. Williams' story. While information was, and is, generally available about Mr. Williams and his receipt of the Medal of Honor for his actions on Iwo Jima in February of 1945, it was the intent of the parties that the book would reflect the "untold" story of Mr. Williams' life and military service. The parties' intent was confirmed through the parties' selection of a title for the book: *Flamethrower: The*

*Untold Story of Iwo Jima Medal of Honor Recipient Woody Williams, Japan's Holocaust and the Pacific War.*

15.     Based on this agreement and understanding, Mr. Williams provided Defendant with information about his life and experiences to be incorporated into the book, including personal and untold stories, anecdotes, recollections and memories. Defendant again travelled to various locations in West Virginia with Mr. Williams, during which Mr. Williams shared personal information about his life before, during and after his military service in World War II. The Defendant also conducted numerous interviews and discussions with Mr. Williams in West Virginia and other locations to obtain information to be used to develop the book.

16.     During these discussions, Mr. Williams also allowed Defendant to borrow items having great personal and sentimental value to him for Defendant's use in preparing the book including, but not limited to, Mr. Williams' handwritten notes, photographs, and other artifacts. Moreover, during this period of time, Mr. Williams also shared with Defendant an original manuscript of his autobiography that he had authored over the years.

17.     Drawing on the information that Mr. Williams provided to Defendant, along with his personal research and other sources, Defendant prepared various drafts of portions of the book which he forwarded to Mr. Williams for his review and comment. Mr. Williams reviewed the drafts, and provided input, analysis and suggestions for modifications to Defendant leading to additional changes in the draft manuscript.

18.     Throughout the remainder of 2017, the parties continued to perform their respective obligations under the agreement to develop a draft of the book. The parties discussed numerous titles to be used for the book, and numerous other matters relative to its content. In

total, the Defendant shared in excess of 20 drafts of portions of the book, or portions thereof, with Mr. Williams for his review and comment.

19.     Towards the end of 2017, and continuing into 2018, the Defendant began discussions with Mr. Williams' family members and representatives about memorializing the oral agreement between Mr. Williams and Defendant and the negotiation of additional terms that the parties may wish to include in the Agreement. In furtherance of these discussions, Defendant prepared and presented a draft contract to Mr. Williams and/or his representatives.

20.     During this time period, the parties exchanged numerous drafts of a proposed written contract.   The parties, along with Mr. Williams' family members and representatives, discussed the terms of the contract during a series of formal and informal meetings. Ultimately, however, the parties were unable to reach an agreement as to the terms of the proposed written contract.

21.     By early 2018, the draft of the book had been completed, subject to additional revisions and edits by the parties and through the publishing process.

22.     At or about that time, the relationship between Mr. Williams and Defendant deteriorated, resulting in a significant breakdown in communication between them. Specifically, the Defendant expressed his dissatisfaction with the financial terms originally agreed upon by the parties prior to the beginning of the book project, indicating that the agreement was not consistent with his understanding of the terms involved in other allegedly similar books of which he had recently become aware.

23.     Despite the breakdown in communication between the parties, Defendant continued with edits to the draft of the book. However, after March of 2018, Defendant failed

and refused to provide subsequent drafts of the book to Mr. Williams for his review and comment.

24.     On information and belief, prior to the breakdown and communication between Mr. Williams and Defendant, Defendant shared various drafts of the book with various individuals, including individuals with military and history backgrounds, for their comment and review.

25.     In the drafts that Defendant circulated for comment and review prior to the breakdown of communication between the parties, the Defendant wrote:

> A humble man, Woody has not exaggerated his record and it has never been questioned. Woody has been a public figure for almost eight decades and there has *never* been any doubt about what he accomplished.

Manuscript Draft No. 21 at 60 (emphasis in original).

26.     On information and belief, after the breakdown in communication between the parties, Defendant continued to modify the draft, and added additional content, which he also circulated to individuals with military/history backgrounds for review.  Defendant did not, however, provide a copy of these additions/modifications to Mr. Williams.  On information and belief, the subsequent additions/modifications contained false and misleading content. Defendant's preparation and circulation of this content was in direct response to Mr. Williams' refusal to agree to the terms that Defendant had proposed in the draft written contract, and in retaliation for the breakdown of communication between the parties, to attempt to force Mr. Williams to agree to Defendant's proposed contract terms.

27.     Mr. Williams subsequently requested the return of his personal items including handwritten journals, notes, photographs, artifacts, manuscripts, handwritten edits and other materials provided to Defendant.

28.     Mr. Williams, through his representatives and counsel, further requested and demanded that Defendant refrain from any unauthorized use of the draft manuscripts, any drafts of the book that Mr. Williams had not approved and/or the use of any other evidence, materials or information derived from or related to the information provided by Mr. Williams during the course of the collaboration.

29.     Moreover, Mr. Williams revoked his consent for Defendant to use his name, likeness, image, personal stories, or otherwise in connection with the book based upon Defendant's actions, including but not limited to his failure to communicate with Mr. Williams and his failure to allow Mr. Williams to review, comment on, and consent to additional drafts of the book.

30.     Defendant has refused to return Mr. Williams' personal items and, upon information and belief, is still in unauthorized possession of those personal items.

31.     On information and belief, despite Mr. Williams' requests, Defendant has stated that he intends to officially publish the book that was the subject of his agreement with Mr. Williams after May of 2019.   Defendant has refused to provide a copy of what he seeks to publish to Mr. Williams for his consent, review and comment, and has expressly indicated through his counsel that Defendant does not need Mr. Williams' permission or consent to proceed with publication of the book.

## COUNT ONE – TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTION

32.     Mr. Williams repeats and incorporates herein by reference each of the allegations and facts contained in Paragraphs 1 through 31 of this Complaint as if fully set forth herein.

33.     Under the clear and unambiguous terms of the oral agreement between the parties, Mr. Williams is to have input into, and authority over, the text and content of any book written

8

and published by the Defendant that contains, refers to and/or uses the information that he provided to Defendant about his life and his military service.

34.    As confirmed by the title of the book selected and agreed to by the parties, the book and the information contained therein is unique in that much of the information about Mr. Williams' life and military service is being published for the first time.

35.    To the extent that Defendant is permitted to move forward with publishing the book contemplated and agreed to by the parties without Mr. Williams having input into and authority over the content of what is published, Mr. Williams will suffer irreparable harm. The specific purposes of the parties' agreement giving Mr. Williams input into and authority over the content of any book that includes his personal information, stories, memories, anecdotes and other information was to ensure that such information is presented factually, in a manner that is respectful to the individuals identified and discussed in the book, and is consistent with Mr. Williams' beliefs and the historical context in which the events occurred. If the Defendant is permitted to publish the book without first complying with the parties' agreement, Mr. Williams will be irreparably deprived of his rights and expectations based on the agreement with Defendant and Defendant's representations to Mr. Williams upon which Mr. Williams justifiably relied. Defendant will also suffer additional harm including, but not limited to, exploitation of and damage to his goodwill and reputation.

36.    Defendant's wrongful conduct, unless and until enjoined and restrained by Order of this Court, will also cause great and irreparable injury to Mr. Williams in that he will be deprived of his invaluable items of personal property, his good will and reputation will be exploited, he will be deprived of his handwritten edits and revisions to draft manuscripts, and that he will suffer damage to his good will and reputation.

37.     There is a likelihood that Mr. Williams will succeed on the merits of this litigation. The terms of the parties' initial, oral agreement were clear and unambiguous in providing that: (1) Mr. Williams would collaborate with Defendant by providing him with personal information, documents, memorabilia, manuscripts, stories, interviews, notes and other information for Defendant's use in writing a book about Mr. Williams' life and military service; (2) Defendant would use such information, along with whatever research that he might conduct, to prepare a draft of the book; (3) the information contained in the book would be factual (as opposed to mere opinion or speculation); (4) Mr. Williams and the Defendant would have input into, and authority over, the text and content of the book; and (5) Mr. Williams and Defendant would share equally in any proceeds from the book. Defendant specifically represented that he agreed to, and would comply with, each of these terms, and in doing so induced Mr. Williams to perform under the agreement by providing Defendant with the personal information referenced herein.

38.     The likelihood of irreparable harm to Mr. Williams without an injunction substantially outweighs the harm to the Defendant, if any, if an injunction is granted. Mr. Williams' agreement with the Defendant specifically provided that both parties would have input into, and authority over the content of, any book that would result from their collaboration. This term was essential to Mr. Williams' agreement with the Defendant to avoid the very situation at issue in this Complaint. If Defendant is permitted to proceed with publishing any book that contains information, edits or data provided by Mr. Williams, Mr. Williams will be irreparably deprived of his authority over the ultimate content of the book and his right to consent to its content and presentation. If an injunction is granted, Defendant will be required to do no more than comply with the terms of his agreement with Mr. Williams. Moreover, given his age, Mr.

Williams will be asking this Court to enter an expedited scheduling order in this case that would allow for a full and final resolution of this matter in 2019.   Any delay to the Defendant in publishing the book, if he is otherwise entitled to do so, will therefore be minimal and not prejudicial to Defendant.

39.     Given Mr. Williams' service to his country, and the importance of his story to United States history and the shared heritage of its citizens, the public interest clearly favors enforcement of the parties' agreement and Defendant's representations to Mr. Williams.

40.     Upon information and belief, the Defendant has, or is about to, enter into a publishing contract by which the book that is the subject of the parties' agreement will be published. Although the Defendant has refused to provide any information to Mr. Williams as to when, or what form, he will publish the book, on information and belief, the Defendant has indicated that he intends to proceed with publishing the book during the month of May of 2019. Given the nature of the allegations raised in this Complaint, and Mr. Williams' interests in the agreement, in the book and relative to Defendant's representations, Mr. Williams has no adequate remedy at law for the injuries that would be caused by the publishing of the book absent compliance with the parties' agreement.   Moreover, Mr. Williams has no adequate remedy at law with respect to the tangible items of personal property that the Defendant refuses to return in that they are unique and personally invaluable to him.

41.     Mr. Williams is entitled to a temporary restraining order, preliminary injunction and permanent injunction which prohibits the Defendant from taking or engaging in any action that is inconsistent in any way with the parties' agreement, and/or the Defendant's representations to Mr. Williams, as set forth herein. To the extent appropriate, Mr. Williams is also entitled to an Order from this Court requiring that the Defendant specifically perform the

promises and representations made to Mr. Williams with respect to the preparation and publishing of the book. Mr. Williams is also entitled to a temporary restraining order, preliminary injunction and permanent injunction requiring the return of the items of personal property, including the handwritten edits and revisions to the draft manuscripts provided to Defendant, and enjoining any unauthorized use of Mr. Williams' name, stories, image, likeness, or otherwise and enjoining the further dissemination, distribution, and/or publication of the draft manuscripts without his authority and consent.

## COUNT TWO – BREACH OF CONTRACT

42.    Mr. Williams repeats and incorporates herein by reference all of the allegations and facts contained in Paragraphs 1 through 41·of this Complaint as if fully set forth herein.

43.    Mr. Williams and the Defendant entered into a specific oral agreement as described above that would govern the terms pursuant to which the parties would perform and collaborate in preparing and writing the book and in sharing information necessary for preparation of the book. Specifically, the parties' agreement was clear and unambiguous in providing that: (1) Mr. Williams would collaborate with Defendant by providing him with personal information, documents, memorabilia, manuscripts, stories, interviews, notes and other information for Defendant's use in writing a book about Mr. Williams' life and military service; (2) Defendant would use such information, along with whatever research that he might conduct, to prepare a draft of the book; (3) the information contained in the book would be factual (as opposed to mere opinion or speculation); (4) Mr. Williams and Defendant would have input into, and authority over, the text and content of the book; and (5) Mr. Williams and Defendant would share equally in any proceeds from the book. Defendant specifically represented that he agreed to, and would comply with, each of these terms, and in doing so induced Mr. Williams to

perform under the agreement by providing Defendant with the personal information referenced herein.

44.     Mr. Williams has fully performed all conditions, covenants, and promises as required by the agreement between the parties.

45.     Defendant has materially breached the agreement by, among other things, failing and refusing to allow Mr. Williams to have input into the content of the book as additional drafts of the book have been prepared and distributed to third persons and by refusing to return Mr. Williams' personal property and information.  The Defendant has further breached, and/or anticipatorily breached, the parties agreement by denying Mr. Williams his right to provide additional input into, and consent if warranted, to the text and content of the book, and by preparing and distributing additional portions of the book that reflect opinion, and false and defamatory material to which the Defendant knew, or should have known, that Mr. Williams would object.  To the extent that the Defendant has published, or publishes the book without Mr. Williams' authority and consent, such actions also constitute a breach of the parties' agreement.

46.     As a result of the Defendant's breaches of his contract with Mr. Williams, Mr. Williams is entitled to an injunction enjoining the Defendant from further actions in violation or breach of the agreement.   To the extent appropriate, Mr. Williams is also entitled to an Order from this Court requiring that the Defendant specifically perform the promises and representations made to Mr. Williams with respect to the preparation and publishing of the book. In the alternative, or to the extent that Mr. Williams cannot receive complete relief through the award of an injunction under the facts of this case, Mr. Williams is entitled to an award of damages sufficient to compensate him for all damages that he has, or will, suffer as a result of Defendant's conduct.

## COUNT THREE – PROMISSORY ESTOPPEL/DETRIMENTAL RELIANCE

47.    Mr. Williams repeats and incorporates herein by reference all of the allegations and facts contained in Paragraphs 1 through 46 as if fully set forth herein.

48.    To the extent necessary and/or appropriate, the allegations contained herein are plead in the alternative to the other claims asserted by Mr. Williams in this Complaint.

49.    In the course of the parties' discussions and negotiations with respect to Mr. Williams' collaboration with Defendant as to the preparation of the book discussed herein, the Defendant made clear and unambiguous promises and representations to Mr. Williams. Specifically, the Defendant promised and represented that if Mr. Williams would collaborate with Defendant by providing him with personal information, documents, memorabilia, manuscripts, stories, interviews, notes and other information for Defendant's use in writing a book about Mr. Williams' life and military service, Defendant would use such information, along with whatever research that he might conduct, to prepare a draft of the book that would contain information that would be factual (as opposed to mere opinion or speculation), that both he and Mr. Williams would have input into, and authority over, the text and content of the book, and that he and Mr. Williams would share equally in any proceeds from the book.

50.    Mr. Williams reasonably relied on Defendant's promises and representations to his detriment. In reliance on Defendant's promises and representations, Mr. Williams provided information about his personal life and military experiences, a draft of an original manuscript that he had prepared, and personal items for Defendant's use in preparing the book. In further reliance on Defendant's promises and representations, Mr. Williams provided edits and input into various drafts of the book.

51.     It was foreseeable to the Defendant that Mr. Williams would rely on Defendant's promises and representations.  Defendant knew, and had actual knowledge that, Mr. Williams did, in fact, rely on Defendant's promises.

52.     Mr. Williams has, and will continue, to suffer injury, irreparable injury and damage as a result of his reasonable and detrimental reliance upon Defendants' promises and representations.

53.     As a result of Mr. Williams' reasonable and detrimental reliance on Defendant's promises and representations, Mr. Williams is entitled to an injunction enjoining the Defendant from further actions in violation of or contrary to Defendant's promises and representations.  To the extent appropriate, Mr. Williams is also entitled to an Order from this Court requiring that the Defendant specifically perform the promises and representations made to Mr. Williams with respect to the preparation and publishing of the book.   In the alternative, or to the extent that Mr. Williams cannot receive complete relief through the award of an injunction under the facts of this case, Mr. Williams is entitled to an award of damages sufficient to place him in the position that he reasonably would have been had he not otherwise reasonably relied on Defendant's promises and representations.

## COUNT FOUR – INTERFERENCE WITH RIGHT OF PUBLICITY

54.     Mr. Williams repeats and incorporates herein by reference all of the allegations and facts contained in Paragraphs 1 through 53 of this Complaint as if fully set forth herein.

55.     To the extent necessary and/or appropriate, the allegations contained herein are plead in the alternative to the other claims asserted by Mr. Williams in this Complaint.

56.     Mr. Williams is a public figure and has, through his investment of time, money, effort, and most notably his service to his country, developed good will and an outstanding reputation within his home state of West Virginia and throughout the entire country.

57.     Defendant's dissemination, distribution, publication, and/or sale of a book or other materials bearing the name and likeness of Mr. Williams is unauthorized to the extent that it is inconsistent with the parties' agreement set forth herein and/or the Defendant's promises and representations to Mr. Williams.

58.     Defendant will be unjustly enriched by any benefit that he receives in connection with the unauthorized dissemination, distribution, publication, and/or sale of the book or other materials bearing the name and likeness of Mr. Williams.

59.     Defendant's prior dissemination and intended future distribution and publication of the book interfere with Mr. Williams' rightful use of his story, name, and likeness.

60.     The Defendant's actions in publishing the book in violation of the parties' agreement as set forth herein and/or the Defendant's promises and representations to Mr. Williams is in violation of Mr. Williams' common law right of publicity.

61.     As a proximate cause of Defendant's acts, Mr. Williams has suffered, and/or will suffer, great detriment to his reputation, business, and goodwill, and has been damaged in an amount not yet fully ascertained.

62.     If not enjoined as requested herein, Defendant's use of Mr. Williams' story, name, and likeness will cause, and continue to cause, irreparable and continuing harm to Mr. Williams, for which he has no adequate remedy at law.

63.     In the alternative or in addition to injunctive relief, to the extent that Mr. Williams cannot receive complete relief through the award of an injunction under the facts of this case,

Mr. Williams is entitled to an award of damages to compensate him for Defendant's unauthorized and improper use of his name and likeness. To the extent warranted, Mr. Williams is also entitled to an award of punitive damages to the extent that Defendant willfully and knowingly makes unauthorized and improper use of his name and likeness.

## COUNT FIVE – CONVERSION

64.　Mr. Williams repeats and incorporates herein by reference all of the allegations and facts contained in Paragraphs 1 through 63 of this Complaint as if fully set forth herein.

65.　Mr. Williams is the owner of the items of the personal property identified and described herein, including handwritten journals, notes, photographs, and artifacts, and he is entitled to immediate possession of the said personal property.

66.　Defendant has no right, title or equitable claim to the ownership and/or possession of the items of personal property, including but not limited to the handwritten journals, notes, photographs, and artifacts.

67.　Mr. Williams gave possession of the items of personal property to Defendant only for the limited purpose of allowing Defendant to examine the items and ascertain information about such items to incorporate into the book described herein. Mr. Williams gave Defendant possession of the items of personal property for no other reasons.

68.　Defendant is exercising unlawful control over the items of personal property.

69.　Defendant has refused and continues to refuse to return the items of personal property to Mr. Williams.

70.　As a proximate result of Defendant's conversion of the above-mentioned property, in addition to the loss of the property itself, Mr. Williams has suffered damages for expenses incurred in pursuing the property and from loss of use of the property.

71.     Mr. Williams is entitled to an Order and/or injunction from this Court mandating the return of the items of personal property described herein. Alternatively, to the extent such an Order and/or injunction cannot provide Mr. Williams with complete relief under the facts of this case, Mr. Williams is also entitled to an award of damages (including punitive damages if warranted) for the loss of use and damage to and wrongful retention of his personal property.

## PRAYER FOR RELIEF

**WHEREFORE**, based upon the foregoing allegations, Mr. Williams respectfully requests that this Court enter its Order granting him:

A) A temporary restraining order preserving the *status quo ante* between the parties;

B) A preliminary injunction precluding the Defendant from taking or engaging in any actions inconsistent with Mr. Williams' rights under the agreement set forth herein or with the Defendant's promises and representations made to him as set forth herein;

C) A permanent injunction precluding the Defendant from taking or engaging in any actions inconsistent with Mr. Williams' rights under the agreement set forth herein or with the Defendant's promises and representations made to him as set forth herein;

D) To the extent appropriate, an Order requiring specific performance of the parties' agreement as set forth herein;

E) To the extent appropriate, an Order requiring that the Defendant immediately return all personal property, notes, manuscripts and other materials provided to him pursuant to the parties' agreement and/or the Defendant's promises and representations to Mr. Williams;

F) An award of money damages sufficient to compensate Mr. Williams for all actual, incidental and/or consequential damages suffered as a result of the Defendant's wrongful conduct described herein;

G) An award of punitive damages, if warranted;

H) An award of all attorneys' fees incurred in connection with this action as allowed for by applicable law and/or pursuant to the inherent authority of this Court;

I) An award of prejudgment and post-judgment interest on all money damages awarded herein;

J) Given the sensitive nature of the issues raised herein, an Order sealing all future pleadings that address or reflect the proposed form and/or content of the book; and

K) Such other and further relief as this Court may deem just, proper and appropriate under the circumstances of this case.

Mr. Williams demands a trial by jury as to all issues so triable.


                                   **HERSHEL WOODROW "WOODY" WILLIAMS**


                              /s/           J.H. Mahaney
                              J.H. Mahaney (W. Va. #6993)
                              John.mahaney@dinsmore.com
                              J. Tanner Watkins (to be admitted Pro Hac Vice)
                              Tanner.watkins@dinsmore.com
                              Brittany S. Given (W. Va. #13400)
                              Brittany.given@dinsmore.com
                              **DINSMORE & SHOHL LLP**
                              611 Third Avenue
                              Huntington, West Virginia 25701
                              P: (304) 529-6181
                              F: (304) 522-4312
                              *Counsel for Plaintiff,*
                                   *Hershel Woodrow "Woody" Williams*

## VERIFICATION

STATE OF WEST VIRGINIA,

COUNTY OF CABELL, TO-WIT:

This day personally appeared before me, the undersigned, Hershel Woodrow "Woody" Williams, who, being first duly sworn, deposed and said that he is the plaintiff bringing the foregoing Verified Complaint, and that, as such, he has read the Verified Complaint, and that he has personal knowledge of the allegations and facts set forth therein, and knows the facts and circumstances set forth therein to be true and complete, both in substance and in fact, to the best of his knowledge, information, and belief.

Hershel Woodrow "Woody" Williams

Taken, subscribed and sworn to before me this 10th day of May, 2019.

My commission expires March 5, 2020.

Maria Cain

Notary Public

[NOTARIAL SEAL]



OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
MARIA CAIN
DINSMORE & SHOHL LLP
611 THIRD AVENUE
HUNTINGTON, WV 25701
My commission expires March 05, 2020

14823635v5