**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

HERSHEL WOODROW WILLIAMS,

        Plaintiff,

v.                               CIVIL ACTION NO.  3:19–cv–00423

BRYAN MARK RIGG, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Hershel Woodrow "Woody" Williams' ("Plaintiff" or "Williams") Amended Motion for Entry of Temporary Restraining Order.[1]   (ECF No. 46.)   For the reasons discussed more fully below, the Court **DENIES** Plaintiff's motion.

*I.     BACKGROUND*

This case arises out of an alleged oral contract dispute between Plaintiff and Defendant Bryan Mark Rigg ("Rigg") over the publication of a book.   On March 20, 2020, during the pendency of this lawsuit, Rigg self–published the book in controversy entitled *Flamethrower: Iwo*

---

[1] Also pending is Plaintiff's Motion for Entry of Temporary Restraining Order.   (ECF No. 43.)   However, Plaintiff filed an Amended Motion seeking the same relief.   (ECF No. 46.)   Thus, Plaintiff's Motion for Entry of Temporary Restraining Order, (ECF No. 43), is **DENIED AS MOOT**.   Next, Defendant Bryan Mark Rigg filed his Motion to Continue or, in the Alternative, Motion to Strike.   (ECF No. 54.)   The Court **GRANTED** this motion during the March 30, 2020, hearing.   (ECF No. 66 at 16, ¶¶ 6–8.)   Finally, at the hearing held on April 6, 2020, Defendant sought to admit Defendant's Exhibit Two, which consisted of an affidavit of Rigg produced in lieu of live testimony. Plaintiff objected, and the Court took the matter under advisement.   (ECF No. 72 at 77–80.)   After further review, the Court **STRIKES** Defendant's Exhibit Two because Defendant had ample opportunity to call Rigg as a live witness at the telephonic hearing and subject him to cross–examination.   It would be fundamentally unfair to allow unexamined testimony when live testimony was so easily offered.

*Jima Medal of Honor Recipient and U.S. Marine Woody Williams and His Controversial Award, Japan's Holocaust and the Pacific War* ("*Flamethrower*").   (ECF No. 47 at 4.)   This book is currently being offered for sale on Amazon.com.   (*Id.*)

Williams is a Congressional Medal of Honor recipient, so earned for his heroism during the Battle of Iwo Jima in World War II, and a well–known public figure who makes frequent public appearances and has been interviewed for numerous articles.   (ECF No. 59 at 3, ¶ 10.)   The parties first met in 2015, while accompanying other veterans on a tour of Guam and Iwo Jima. (*Id.* ¶ 12.)   After this initial introduction, Plaintiff states the parties had several discussions concerning the possibility of collaborating to write Williams' biography.   (*Id.* ¶ 13.)   However, Rigg, a historian and author, states he had already decided to write a book about the Pacific campaign of World War II prior to the parties' initial introduction.   (ECF No. 48 at 4.)   He states he had traveled to Guam and Iwo Jima as part of this research, and then, after meeting Williams, decided to incorporate Williams in the book as a vehicle to tell the stories of all servicemen who fought in the Pacific campaign.   (*Id.* at 4–5.)

In July of 2016, Rigg visited West Virginia, where Williams was born and still resides, and met with Williams and his family to gather personal details about Williams' life.   (ECF No. 59 at 4, ¶ 14.)   On February 12, 2017, Rigg returned to West Virginia to again meet with Williams and his representatives at the Holiday Inn hotel in Barboursville, West Virginia, where Plaintiff alleges the parties discussed the terms of their collaboration.   (*Id.* ¶ 15.)   Plaintiff contends the parties both agreed to the following:

1. Mr. Williams would provide Defendant Rigg with personal information about his life and his military service;

2.  Defendant Rigg would conduct research as necessary for the book and prepare a draft manuscript of the book;

3.  The information contained in the book would be factual as it related to Mr. Williams;

4.  Mr. Williams, along with Defendant Rigg, would have input into, and authority over, the text and content of the book; and

5.  Mr. Williams and Defendant Rigg would share equally in any proceeds from the book.

(*Id.*)   Based on this alleged agreement, Williams provided Rigg with information, including untold stories and sentimental items, which Rigg used to prepare drafts of the book.   (*Id.* ¶ 19.)

During the writing process, Rigg shared drafts of the book with Williams and Williams in turn would provide suggested edits and revisions.   (*Id.* at 6, ¶ 21.)   Towards the end of 2017, the parties attempted to draft a written contract to memorialize the alleged oral agreement.   (*Id.* at 7, ¶ 23.)   Over the course of a year, the parties, through Williams' representatives, exchanged numerous drafts of this proposed written contract, but were ultimately unable to reach an agreement.   (*Id.* ¶¶ 24–25; ECF No. 48 at 7.)   Thereafter, the relationship between the parties began to deteriorate due to both parties' dissatisfaction with the failed written contract.   (ECF No. 59 at 8, ¶ 27.)   After this breakdown in communication, Williams became aware of additions to the manuscript which called into question his military actions during the Battle of Iwo Jima and the legitimacy of his Medal of Honor.   (ECF No. 47 at 3.)   Plaintiff alleges these statements are "defamatory and misleading."   (ECF No. 59 at 8–9, ¶ 31.)   As a result of this, Plaintiff filed this suit alleging the following six causes of action: (1)   preliminary and permanent injunction to enforce oral agreement; (2) breach of oral contract: (3) promissory estoppel/detrimental reliance;

(4) conversion of an idea; (5) joint venture; and (6) interference with the right of publicity.   (ECF No. 59.)

On March 21, 2020, in response to Defendant's self–publication of the book, Plaintiff filed his Amended Motion for Entry of Temporary Restraining Order.   (ECF No. 46.)   Defendant responded, (ECF Nos. 48, 49), and Plaintiff replied, (ECF No. 56).   On March 30, 2020, third–party Eugene Volokh filed his *Amicus Curiae* Brief after being granted leave by the Court.   (ECF No. 63.)   A motion hearing was held by the Court on March 30, 2020, and an evidentiary hearing was held on April 6, 2020.   (ECF Nos. 61, 68.)   As such, this motion has been fully briefed and argued by the parties and is ripe for adjudication.

## II.   LEGAL STANDARDS

### A.  Preliminary Injunction

"Rule 65 of the Federal Rules of Civil Procedure provides for the issuance of preliminary injunctions as a means of preventing harm to one or more of the parties before the court can fully adjudicate the claims in dispute."  *Fred Hutchinson Cancer Research Ctr. v. BioPet Vet Lab, Inc.*, 768 F. Supp. 2d 872, 874 (E.D. Va. 2011).   A preliminary injunction is an extraordinary remedy never awarded as of right. *See Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 345 (4th Cir. 2009) (hereinafter "*Real Truth I*"), *vacated on other grounds*, 559 U.S. 1089 (2010), *reissued as to Parts I & II*, *Real Truth About Obama, Inc. v. FEC*, 607 F.3d 355 (4th Cir. 2010).   In each case, the Court must balance the competing claims of injury and consider the effect of granting or withholding the requested relief.   "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."   *Weinberger v. Romero– Barcelo*, 456 U.S. 305, 312 (1982).

"A plaintiff seeking a preliminary injunction must establish (1) that he is likely to succeed on

4

the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)).   "All four elements must be established by a 'clear showing' before the injunction will issue." *Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 862, 868 (S.D. W. Va. 2014) (quoting *Real Truth I*, 575 F.3d at 346).   The plaintiff bears the burden of showing a "sufficient factual basis" for granting the injunction "beyond the unverified allegations in the pleadings." *Id.* at 868–69 (citations omitted).

The plaintiff must demonstrate a *likelihood* of irreparable harm without a preliminary injunction; a mere *possibility* of harm will not suffice. *Id.* at 21.   Such likelihood of irreparable harm justifies a preliminary injunction to protect the status quo and "preserve the court's ability to render a meaningful judgment on the merits." *United States v. South Carolina*, 720 F.3d 518, 524 (4th Cir. 2013) (quoting *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003)). *See also Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.").   A plaintiff does not have to prove his or her case in full to succeed on a motion for preliminary injunction, and the findings of fact and conclusions of law made at this stage are not binding at a trial on the merits. *See id.* (citations omitted).

Regarding likelihood of success, prior law in the Fourth Circuit was that there is a "'flexible interplay' among all the factors considered . . . for all four [factors] are intertwined and each affects in degree all the others." *Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir. 1977) (citations omitted).   Accordingly, plaintiffs were not strictly required to demonstrate likelihood of success on the merits.   Rather, "it [was] enough that grave or serious

5

questions on the merits [were] presented." *Id.* But in the wake of the Supreme Court's decision in *Winter*, the *Blackwelder* balancing approach "may no longer be applied in granting or denying preliminary injunctions in the Fourth Circuit." *Real Truth I*, 575 F.3d at 347.   Instead, the Fourth Circuit has held that a party seeking a preliminary injunction must demonstrate by "a clear showing that it is likely to succeed at trial on the merits." *Id.* at 351.   The Fourth Circuit has not expressly required a movant to prove that success on the merits is "more likely than not" in order to meet the requirement of a clear showing, but the new requirement "is far stricter than the *Blackwelder* requirement that the plaintiff demonstrate only a grave or serious question for litigation." *Id.* at 345–46.

### B. Temporary Restraining Order

Rule 65(b) of the Federal Rules of Civil Procedure authorizes a court to issue a temporary restraining order without notice to the opposing party if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. R. 65(b)(1)(A)–(B).   "The standard for granting either a TRO or a preliminary injunction is the same." *Sarsour v. Trump*, 245 F. Supp. 3d 719, 728 (E.D. Va. 2017) (quoting *Moore v. Kempthorne*, 464 F.Supp.2d 519, 525 (E.D. Va. 2006)).

### III.   DISCUSSION

Plaintiff moves for both a temporary restraining order and a preliminary injunction enjoining Rigg from the "dissemination, distribution, selling, offering for sale and/or publication" of his book *Flamethrower* as well as any other book or future work based upon the life of Williams. (ECF No. 47 at 5.)   Plaintiff alleges the parties entered into an oral agreement where Williams

6

would provide Rigg with personal information about his life and the events that led to his Medal of Honor if Rigg allowed Williams editorial control over the content of the book to ensure that the book was factual.   (*Id.*)   Plaintiff further alleges he fully performed his part of the agreement, but Rigg refused to allow Williams control over the contents of the book.   (*Id.*)   Plaintiff also argues the publication of *Flamethrower* "represents Defendant's purposeful, intentional attempt to malign, defame and injure Mr. Williams," and Williams "will forever lose the opportunity to accurately portray his life story and personal experiences and will suffer injury to his reputation and goodwill."   (*Id.*)   To the contrary, Defendant argues this injunction is designed to restrain free speech in violation of the First Amendment to the United States Constitution.   (ECF No. 48 at 2.)   Further, Defendant argues that his book concerns matters of public interest concerning a public figure, which weighs even more heavily against this type of injunction.   (*Id.*)   Defendant maintains that Plaintiff is unable to carry this heavy burden.   (*Id.* at 13.)

### A.  *Temporary Restraining Order*

Plaintiff moves pursuant to Rule 65(b) of the Federal Rules of Civil Procedure for a temporary restraining order and argues notice should not be given to Defendant due to the harm that will result from the publication of the book.   (ECF No. 47 at 10.)   The Court declined to grant this temporary injunction request at oral argument.   (ECF No. 66 at 8, ¶¶ 10–13.)   Thus, the Court **DENIES** Plaintiff's request for a temporary restraining order and instead treats this motion as a request for a preliminary injunction.

### B.  *Preliminary Injunction*

Plaintiff seeks a preliminary injunction to enjoin Rigg from the further sale of *Flamethrower*.   Under the second *Winter* factor, Plaintiff argues Rigg's "egregious conduct and erroneous allegations" will result in irreparable injury to Williams' reputation and goodwill.   (ECF

No. 47 at 5.)   Further, under the third factor, Plaintiff argues the balance of the equities favor granting this injunction because, again, Williams will suffer reputation–based harms, and he "will lose the opportunity to accurately portray his life story and personal experiences" if relief is delayed until trial. (*Id.* at 8.)   However, despite alleging this reputation–based damage and continually challenging the truth of certain statements contained within Rigg's book, Plaintiff heavily disputes that the First Amendment applies to this request.   As a preliminary matter, this Court must determine whether Rigg's First Amendment rights would be implicated by the issuance of an injunction on this basis. Thus, the question becomes: does the First Amendment apply to Plaintiff's request for a preliminary injunction when the Amended Complaint makes contract–based claims but Plaintiff relies on defamation and reputation–based harm to support his request for an injunction?

i.   *Application of First Amendment Doctrine*

The Court must first determine which First Amendment doctrine applies to this case. When looking at the alleged harm pled in support of this injunction, Plaintiff claims Rigg has published false and defamatory statements that will result in reputation–based damages if further sale is not enjoined.   Thus, the doctrine best applied involves cases considering anti–libel preliminary injunctions because Plaintiff has based his arguments under the second and third *Winter* factors on alleged defamation and reputation–based harms.

The First Amendment prohibits "abridging the freedom of speech," and the United States Supreme Court has interpreted this prohibition to forbid, among other things, "prior restraints." *See Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419–20 (1971) [hereafter *Keefe*]; *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 713–23 (1931).   A "prior restraint" is perhaps best defined as "administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur."   *Alexander v. United States*, 509 U.S.

8

544, 550 (1993) (internal quotations and emphasis omitted).   The United States Supreme Court has established that injunctions to enjoin libel are considered prior restraints.   *Tory v. Cochran*, 544 U.S. 734, 738 (2005) (holding that a permanent injunction to enjoin speech amounted to "an overly broad prior restraint upon speech"); *see also Alexander*, 509 U.S. at 550 ("Temporary restraining orders and permanent injunctions—i.e., court orders that actually forbid speech activities—are classic examples of prior restraints.").

Further, the Supreme Court has repeatedly held that "prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 558–559 (1976).   "Any prior restraint on expression comes to this Court with a 'heavy presumption' against its constitutional validity."   *Keefe*, 402 U.S. at 419.   Thus, the First Amendment imposes a number of constraints on a plaintiff who seeks relief for defamation.   "[I]t is essential that the First Amendment protect some erroneous publications as well as true ones" in order "to insure the ascertainment and publication of the truth about public affairs."   *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968).   However, "[l]iberty of speech . . . is . . . not an absolute right, and the State may punish its abuse."   *Near*, 283 U.S. at 708.   There are certain categories of speech that are "no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.' Libelous speech has been held to constitute one such category . . . ."   *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 503–504 (1984) (internal citations and quotations omitted); *see also Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 245–246 (2002) ("The freedom of speech has its limits; it does not embrace certain categories of speech, including defamation . . . .").

9

The Supreme Court has balanced the need to protect reputation with its desire to safeguard expression by developing a series of rules relating to the identity of the plaintiff and the nature of the subject matter.   One of these four categories includes cases where the plaintiff is a public figure and the matter is of public concern.   Specifically, public figures may recover for defamation only if they prove actual malice by clear and convincing evidence.   *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974).   Public figures are persons not occupying a government office but who "have assumed roles of especial prominence in the affairs of society . . . . [T]hose classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved.   In either event, they invite attention and comment."   *Id.* at 345.

In addition, any injunction restricting speech must "burden no more speech than necessary to serve a significant government interest."   *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 754 (1994).   Traditionally, injunctions to enjoin libel were disfavored under both common law and First Amendment prior restraint doctrine.   *See, e.g.*, *Alberti v. Cruise*, 383 F.2d 268, 272 (4th Cir. 1967).   However, this traditional rule appears to be changing.   Six federal circuit courts of appeal have held that injunctions are permissible to prevent libel, but only after a finding on the merits that the speech is unprotected.   *See McCarthy v. Fuller*, 810 F.3d 456, 462 (7th Cir. 2015) ("An injunction against defamatory statements, if permissible at all, must not through careless drafting forbid statements not yet determined to be defamatory, for by doing so it could restrict lawful expression."); *San Antonio Cmty. Hosp. v. S. Cal. Dist. Council of Carpenters*, 125 F.3d 1230, 1239 (9th Cir. 1997) (affirming a preliminary injunction but only because the district court made a finding that the speech was fraudulent and "the First Amendment does not protect fraud");

*Auburn Police Union v. Carpenter*, 8 F.3d 886, 903 (1st Cir. 1993) ("An injunction that is narrowly tailored, based upon a continuing course of repetitive speech, and granted only after a final adjudication on the merits that the speech is unprotected does not constitute an unlawful prior restraint."); *Brown v. Petrolite Corp.*, 965 F.2d 38, 51 (5th Cir. 1992) (upholding an injunction to enjoin defamation after a trial on the merits, but remanding to allow the district court to narrow the language); *Kramer v. Thompson*, 947 F.2d 666, 675 (3d Cir. 1991) ("The United States Supreme Court has held repeatedly that an injunction against speech generally will not be considered an unconstitutional prior restraint if it is issued after a jury has determined that the speech is not constitutionally protected."); *Lothschuetz v. Carpenter*, 898 F.2d 1200, 1208–09 (6th Cir. 1990) (Wellford, J., concurring in part and dissenting in part) (permitting an injunction, but limiting the "application of such injunction to the statements which have been found in this and prior proceedings to be false and libelous").[2]

In addition, many state courts have reached the same conclusion.   *See, e.g.*, *Balboa Island Vill. Inn, Inc. v. Lemen*, 156 P.3d 339, 341 (2007) ("[D]efendant's right to free speech would not be infringed by a properly limited injunction prohibiting defendant from repeating statements about plaintiff that were determined at trial to be defamatory."); *Hill v. Petrotech Res. Corp.*, 325 S.W.3d 302, 310 (Ky. 2010) (vacating a temporary injunction barring defamatory comments but adopting what the court classified as the "modern rule" that defamatory speech may be enjoined "only after the trial court's final determination by a preponderance of the evidence that the speech at issue is, in fact, false . . . .").   Finally, although the Supreme Court has not addressed this issue directly, many of these federal and state courts rely on prior Supreme Court opinions that suggest

---

[2] In the Sixth Circuits' opinion, Judge Wellford's concurring and dissenting opinion was joined by Judge Hull, which made the dissent "the opinion of the court on this issue."   *Lothschuetz*, 898 F.2d at 1206.

an adjudication on the merits is required to enjoin alleged defamatory speech.   *See, e.g.,* *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Rel.*, 413 U.S. 376, 390 (1973) ("The special vice of a prior restraint is that communication will be suppressed, either directly or by inducing excessive caution in the speaker, before an adequate determination that it is unprotected by the First Amendment.").   Thus, the majority rule first requires a finding on the merits that such speech is unprotected before an injunction can be issued enjoining further speech.   Otherwise, the injunction runs afoul of the First Amendment and constitutes a prior restraint on what might otherwise be lawful speech.

### ii.    *Impact on Freedom of Speech*

The Court must now determine if enjoining further sale and dissemination of *Flamethrower* will infringe on Rigg's right to freedom of speech under the First Amendment of the United States Constitution.[3]   This question is more complicated here as Plaintiff argues the First Amendment is not implicated by this motion.   (ECF No. 56 at 5.)   Plaintiff argues this is solely an oral contract and promissory estoppel action, and this injunction is meant to protect Williams' reasonable expectation that he would have partial editorial control over the content and accuracy of the book

---

[3] Defendant argues this Court is bound under the *Erie* doctrine to apply West Virginia law to this preliminary injunction request.   Defendant's argument is erroneously based on the Fourth Circuit's holding in *Lord & Taylor, LLC v. White Flint, L.P.*, where the court held that the *Erie* doctrine requires federal courts sitting in diversity to apply state substantive law to a request for *permanent* injunctive relief.   780 F.3d 211, 215 (4th Cir. 2015) (citing *Capital Tool and Mfg. Co., Inc. v. Maschinenfabrik Herkules*, 837 F.2d 171, 172 (4th Cir. 1988)).   However, the Fourth Circuit has explicitly stated that "[t]he grant of preliminary injunctions in diversity cases, as well as those of original jurisdiction, is subject to federal standards*." Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991) (citing *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 799 (3d Cir.1989)).   Thus, because Plaintiff seeks a preliminary not a permanent injunction, this Court will apply federal law.   However, regardless of the standards applied here, the Court would be led to the same result.   *See Kwass v. Kersey*, 81 S.E.2d 237 (W. Va. 1954) (interpreting West Virginia Constitution Article III, Section 7 and 8 to hold that only a jury should rule on the truth or falsity of an alleged defamatory matter and dissolving a temporary injunction because defamation cannot be brought in equity).

in exchange for providing personal and private information to Rigg that could not have otherwise been obtained. (*Id.*)

Plaintiff argues this case is controlled by the United States Supreme Court's holding in *Cohen v. Cowles Media Co.*, that a promissory estoppel action brought by a confidential source against a newspaper did not implicate the First Amendment. 501 U.S. 663 (1991). In *Cowles Media*, a newspaper promised to keep a source's identity confidential in exchange for information. *Id.* at 665. Despite this agreement, the reporters decided to publish the source's name as a part of their story, and the source was fired by his employer. *Id.* at 666. The source then sued the newspaper for fraudulent misrepresentation and breach of contract, but the newspaper argued the First Amendment barred the lawsuit. *Id.* The Supreme Court held that the First Amendment did not prohibit the recovery of damages under state promissory estoppel law for the newspaper's breach of a promise of confidentiality because it was a law of general applicability that did not offend the First Amendment simply because it had incidental effects on the newspaper's ability to gather and report the news. *Id.* at 669.

> Most importantly, the Supreme Court emphasized that the source, Cohen, was not
>
> attempting to use a promissory estoppel cause of action to avoid the strict requirements for establishing a libel or defamation claim. As the Minnesota Supreme Court observed here, "Cohen could not sue for defamation because the information disclosed [his name] was true." 457 N.W.2d, at 202. Cohen is not seeking damages for injury to his reputation or his state of mind. He sought damages in excess of $50,000 for breach of a promise that caused him to lose his job and lowered his earning capacity. Thus, this is not a case like *Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988), where we held that the constitutional libel standards apply to a claim alleging that the publication of a parody was a state–law tort of intentional infliction of emotional distress.

*Id.* at 671.   This is what separates the case at hand from *Cowles Media*.   Plaintiff has repeatedly claimed that Rigg's speech is false, defamatory, and presents a risk of harm to Williams' reputation, goodwill, and his public image.   In fact, these allegations serve as the basis for Plaintiff's argument that the second and third *Winter* factors weigh in favor of granting this injunction.

While Plaintiff attempted to change his argument in reply and at oral argument, his memorandum in support clearly relies on reputation–based harm.   (ECF No. 47 at 8 ("If injunctive relief is denied until a final proceeding, Mr. Williams will suffer irreparable harm to his reputation and goodwill.").)   At other points within his memorandum, Plaintiff classifies Rigg's statements as "erroneous allegations" and argues, in bolded language, that "the book represents Defendant's purposeful, intentional attempt to malign, defame and injure Mr. Williams."   (*Id.* at 5.)   However, in Reply, Plaintiff now argues that "his current motion does not rest on the truth or falsity" of Rigg's assertions "or the harm to his reputation that they might cause."   (ECF No. 56 at 5.) Plaintiff further argues there is not a specific portion of the book he finds false or defamatory, yet continually references Rigg's statements relating to William's Medal of Honor.   (*See* ECF No. 66 at 15, ¶¶ 1–6; ECF No. 47 at 8.)   These statements, like the entirety of Plaintiff's arguments here, are blatantly contradictory.

By basing his claims for irreparable harm on allegations of falsity and defamation, Williams seeks a preliminary injunction that will, in essence, punish Rigg for the content of his speech.   There is no question that Plaintiff's contract and estoppel claims are based in laws of general applicability that, like in *Cowles Media*, has only incidental effects on expression as applied in this case.   *Id.* at 671 (stating that "[t]he parties themselves . . . determine[d] the scope

14

of their legal obligations, and any restrictions that may be placed on the publication of truthful information are self–imposed").   However, Plaintiff has repeatedly challenged the truth of Rigg's statements concerning his Medal of Honor.   Further, the harm Plaintiff seeks to prevent with this injunction is based entirely on defamation, libel, and reputation–based damages.   Thus, granting a preliminary injunction on this basis would require this Court to evaluate Rigg's speech and, at a minimum, pass judgment on the truth or falsity of that speech and its potential for harm.

Further, even if the Court were to just consider the first *Winter* factor, concerning the likelihood of success of the merits, it would still be required to evaluate the truth of Rigg's speech. Plaintiff alleges an oral contract was formed between the parties where they both agreed "[t]he information contained in the book would be factual as it related to Mr. Williams," and Plaintiff claims Rigg violated their oral agreement by publishing a book that contains false statements, in violation of their alleged oral contract.   (ECF No. 59 at 4, ¶ 15.)   Further, Plaintiff's own witnesses emphasized the importance of truth and accuracy.   Plaintiff's witness Brent Casey, Williams' grandson, stated authors had never published a story about Williams that got the facts correct, and Williams "wasn't going to authorize permission to write a book unless it was going to be completely factual."   (ECF No. 72 at 11, ¶¶ 13–18.)   Williams himself testified that the first condition Rigg had to agree to before Williams would participate was that the book would be factual and truthful.   (ECF No. 72 at 51, ¶¶ 6–9.)   Thus, Plaintiff has, again, put the content of Rigg's speech at issue because, in order to have violated this alleged oral agreement, the Court must determine if the content is indeed "factual."

In essence, Plaintiff seeks to bar further speech before a final adjudication on the merits concludes that the speech is unprotected.   Thus, ruling on this preliminary injunction request

would require this Court to pass judgment on the falsity of Rigg's speech and the potential damage this speech may cause to Williams' reputation.   The Court declines to make such a finding before a final determination on the merits and is unable to make such a determination on the record currently before it.   Thus, based upon similar rulings by multiple federal circuit courts of appeal, this requested relief constitutes a direct encroachment upon the rights and guarantees embodied in the First Amendment of the United States Constitution.

### iii.    Waiver of First Amendment Rights

Plaintiff also takes the position that the oral agreement between the parties serves as a waiver of Rigg's First Amendment rights.   (ECF No. 56 at 8.)   Again, Plaintiff argues Defendant entered into an oral agreement with Williams on February 12, 2017, and the parties agreed to the following:

1. Mr. Williams would provide Defendant Rigg with personal information about his life and his military service;

2. Defendant Rigg would conduct research as necessary for the book and prepare a draft manuscript of the book;

3. The information contained in the book would be factual as it related to Mr. Williams;

4. Mr. Williams, along with Defendant Rigg, would have input into, and authority over, the text and content of the book; and

5. Mr. Williams and Defendant Rigg would share equally in any proceeds from the book.

(ECF No. 59 at 4, ¶ 15.)   Plaintiff argues Rigg conferred editorial control over both the content and accuracy of the book to both parties, thus waiving Rigg's First Amendment rights.   (ECF No. 56 at 8.)   Defendant counters that, when viewing the Supreme Court's decision in *Cowles Media*

and the other cases cited by Plaintiff, First Amendment rights may only be waived where there is a specific, written contractual waiver between the parties.   (ECF No. 66 at 35, ¶¶ 21–25.)

In *Cowles Media*, the Supreme Court rejected the argument that awarding damages for the breach of the promise of confidentiality violated the First Amendment and held that the newspaper could be liable for violating the promise it made to the source to keep his name confidential. *Cowles Media*, 501 U.S. at 671–72.   The newspaper was not allowed to print the source's name because the newspaper specifically promised it would not, thus waving a portion of its First Amendment right to freedom of the press.   By holding the newspaper accountable for this promise, the Supreme Court showed support for the idea that First Amendment rights can be limited via contract.   Thus, based on this holding, this Court is willing to assume that the right to free speech can be waived.

However, the Supreme Court has not articulated a standard for determining whether a party has waived his free speech rights.   Though in *Curtis Pub. Co. v. Butts*, the Supreme Court did refuse to find that a party waived his right to bring a First Amendment defense to a libel claim, and held that, "[w]here the ultimate effect of sustaining a claim of waiver might be an imposition on that valued freedom, we are unwilling to find waiver in circumstances which fall short of being clear and compelling."   388 U.S. 130, 145 (1967).   Additionally, in *Fuentes v. Shevin*, the Court stated, "a waiver of constitutional rights in any context must, at the very least, be clear." 407 U.S. 67, 95 (1972).   Plaintiff's arguments here are at odds with these statements because it is undisputed that no written contract existed between the parties.

Further, when reviewing the few cases analyzing the enforcement of non–disparagement clauses under preliminary injunction standards, Defendant is correct that all involve a specific,

17

written contract that contains some type of language limiting the parties' future statements.   *See, e.g.*, *Taylor v. DeRosa*, No. 03–08–00199–CV, 2010 WL 1170228 (Tex. Ct. App. Mar. 24, 2010) (affirming a preliminary injunction to enforce a non–disparagement clause in a written settlement agreement); *Perricone v. Perricone*, 972 A.2d 666 (Conn. 2009) (affirming a preliminary injunction to enforce a non–disparagement clause contained within a confidentiality agreement which forbid defamatory or disparaging statements); *Aultcare Corp. v. Roach*, No. 2007CA0009, 2007 WL 3088036 (Ohio Ct. App. Oct. 22, 2007) (affirming a preliminary injunction to enforce a non–disparagement clause in a written settlement agreement); *see also Brammer v. KB Home Lone Star, L.P.*, 114 S.W.3d 101, 104 (Tex. App. 2003) (holding that the waiver of a parties First Amendment rights was not knowing, voluntary, and intelligent).

To the contrary, the plaintiff here asks this Court to enforce a disputed oral contract, meaning there is no language for the Court to interpret or consider.   Plaintiff is essentially arguing that he himself interpreted Rigg to make statements, three years prior, that serve as a waiver of Rigg's First Amendment rights today.   This argument is a reach, to say the least.   The Supreme Court has classified the freedom of thought and speech to be "the matrix, the indispensable condition, of nearly every other form of freedom."   *Curtis*, 388 U.S. 130, 145 (1967) (quoting *Palko v. State of Connecticut*, 302 U.S. 319, 327 (1937)).   It is only logical to conclude that clear, compelling, written language is required to waive such rights.

Plaintiff presented no evidence at the preliminary injunction hearings to support a finding that Rigg knowingly, clearly, and compellingly agreed to waive his right to make the statements Plaintiff classifies as false and defamatory.   Thus, Plaintiff has failed to show that this preliminary injunction would not constitute a prior restraint.   Accordingly, the Court **DENIES** Plaintiff's

motion for a preliminary injunction because such relief would constitute an unconstitutional prior restraint in violation of the First Amendment of the United States Constitution.

*IV.      CONCLUSION*

For the reasons set forth above, the Court **DENIES** Plaintiff's Amended Motion for Entry of Temporary Restraining Order.   (ECF No. 46.)

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:       May 4, 2020

_____
THOMAS E. JOHNSTON, CHIEF JUDGE

19
