**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT HUNTINGTON**

HERSHEL WOODROW "WOODY"
WILLIAMS,

                               Plaintiff,

                               Civil Action No.  3:19-CV-00423
v.                              Honorable Judge Johnston

BRYAN MARK RIGG, an individual;
STACKPOLE, INC., a Pennsylvania
Corporation; and THE ROWMAN &
LITTLEFIELD PUBLISHING GROUP,
INC., a Delaware Corporation,

                               Defendants.

---

## BRYAN MARK RIGG'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

     Bryan Mark Rigg, Defendant, by and through undersigned counsel, hereby submits his Memorandum in Support of his Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.[1]

### UNDISPUTED FACTS

     In 2015, Mr. Rigg and Mr. Williams met during a trip to Guam and Iwo Jima to commemorate the seventieth anniversary of the battle. April 6, 2020 T.R.O. Hearing Transcript, attached as **Exhibit A**, at 50:13–17. While there, either Mr. Williams or his grandson Brent

---

[1] As noted in the Joint Motion to Extend Deadlines, depositions have not yet occurred in this matter due to a document dump by a third party that included a significant amount of attorney-client privileged documents and another private issue which prevented the depositions from moving forward which is detailed in the Motion to Extend Deadlines that the parties have sought to have filed under seal.  Plaintiff is still reviewing and redacting the privileged materials, and as a result, Defendant has still never review the documents ordered produced by the magistrate months ago.  Defendant Bryan Mark Rigg is therefore filing this Motion for Summary Judgment and memorandum in support thereof because today is the deadline and to preserve his rights to make these arguments, but we fully expect to file a supplemental or amended brief after depositions.

Casey discussed the possibility of Mr. Rigg writing a book about the battle, told through the lens of Mr. Williams' experience. *Id.* at 50:18–24. The parties discussed their expectations for the book, with Mr. Williams insisting that the book be factual and that he have some authority over the content of the book. *Id.* at 50:25–51:15. Mr. Williams wanted such control so he could make sure the book was factual. *Id.* As an historian, Mr. Rigg agreed that the book should be factual and agreed Mr. Williams could review the contents of the book. *Id.* However, there was no discussion regarding what would happen if these two terms conflicted. *Id.* at 67:23–68:11. Although it was acknowledged that the agreement needed to be written down, work on the book moved forward based on the discussions held on Guam and Iwo Jima. *Id.* at 61:24–62:4; 12:12–20; *see also* Am. Verified Compl. (ECF No. 59), at ¶ 22.

Mr. Rigg began working on the book, and in August 2016, began providing Mr. Williams and his family with drafts of the book. *Id.* at 15:12–25. On or around May 27, 2017, the parties began exchanging drafts of a written contract as well. *Id.* at 16:22–17:23. However, the parties were never able to reach an agreement on contract terms. Various draft contracts were exchanged, but there was never a point when all signatories to the contract could agree to its terms. *See* Draft Contracts, attached as **Exhibit B**. Eventually, these contract negotiations broke down when Mr. Rigg became uncomfortable with certain terms required by Mr. Williams. **Exhibit A**, at 30:13–24. Further, despite agreeing the book would be factual, Mr. Williams began to object to the inclusion of factual content supported by documentary evidence. Affidavit of Bryan Mark Rigg, attached as **Exhibit C**, at ¶ 3. This caused the relationship between the parties to strain past its breaking point. *Id.* at ¶¶ 3–6. With the working relationship between the two shattered, Mr. Rigg stopped relying on information from Mr. Williams and no longer sent Mr. Williams manuscripts of *Flamethrower* to review. **Exhibit A**, at 30:25–31:4.

Eventually, when Mr. Williams realized that Mr. Rigg intended to continue writing and to publish a book based on the research he had done, Mr. Williams filed suit with this Court. *See* Original Compl., (ECF No. 1). As the case proceeded and Mr. Rigg's publishers were identified, Mr. Williams amended his Complaint to name Mr. Rigg's publishers. *See* Am. Verified Compl., (ECF No. 59). As a result, the publishers with which Mr. Rigg had a contract opted out of publishing the book. *See* Emails from Judith Schnell, attached as **Exhibit D**. Instead, Mr. Rigg had to turn to self-publication. *Flamethrower* was released on March 20, 2020. Despite being released more than fourteen months ago, and despite being asked in discovery to specifically identify any harm suffered, there has been no evidence introduced establishing Plaintiff's claims for harm, reputational or otherwise. Indeed, Plaintiff has agreed that he is no longer seeking seeking any damages for loss of revenue or economic impact on the Foundation as part of his claims in this case.

## LEGAL STANDARD

A party is entitled to summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Initially the moving party must show an absence of a genuine issue of material fact. *United Mine Workers of America, Dist. 31 v. Thames*, 821 F. Supp. 426 (S.D.W.Va. 1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Pursuant to this standard, the burden then shifts to the nonmoving party to show that summary judgment should not be granted. *Celotex*, 477 U.S. at 322–25. Although the Court must view all underlying facts and inferences in the light most favorable to the nonmoving party, such party must nonetheless

3

offer some "concrete evidence from which a reasonable jury could return a verdict in his favor [.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986). If the plaintiff fails to make a sufficient showing, all other facts are immaterial, and summary judgment should be granted as a matter of law. *Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 393 (4th Cir. 1994) (citing *Celotex*, 477 U.S. at 322-23).

## LAW AND ARGUMENT

At this stage, Mr. Williams has narrowed his claims to breach of contract and promissory estoppel. Pl.'s Resp. in Opp. to Def.'s Mot. to Dismiss Am. Verified Compl., (ECF No. 102), at 4. As argued below, both of these claims fail. The breach of contract claim fails because evidence on record indicates the parties never reached a meeting of the minds, and, to the extent a valid contract can be said to exist, Mr. Williams breached it first. The promissory estoppel claim fails because Mr. Williams cannot produce evidence to satisfy all requisite elements of the claim. Therefore, summary judgment should be granted in Mr. Rigg's favor.

**I.      Recovery under Mr. Williams' Breach of Oral Contract Claims is Barred Because There Was No Meeting of the Minds and Mr. Williams Breached First.**

Throughout this case, Plaintiff has claimed the existence of an enforceable contract. No such contract exists. In addition to the Statute of Frauds,[2] Plaintiff's breach of contract claim fails for two reasons. First, no enforceable contract exists because there was no meeting of the minds regarding the terms of the agreement. Second, Plaintiff's claim fails because, even if an enforceable contract exists, Plaintiff breached the agreement first and as such cannot enforce the alleged contract.

---

[2] Defendant restates and incorporates by reference his arguments regarding Plaintiff's Breach of Contract and Promissory Estoppel claims first raised in his *Motion to Dismiss Amended Verified Complaint*. (ECF No. 34).

Plaintiff's breach of oral contract claim fails because there was no meeting of the minds on the terms. Under West Virginia law, establishing the existence of a contract requires "competent parties, legal subject-matter, valuable consideration, and mutual assent. There can be no contract, if there is one of these essential elements upon which the minds of the parties are not in agreement." *Ways v. Imation Enterprises Corp.*, 214 W. Va. 305, 313, 589 S.E.2d 36, 44 (2003). "[M]utuality of assent is an essential element of all contracts." *Bailey v. Sewell Coal Co.*, 190 W. Va. 138, 140, 437 S.E.2d 448, 450 (1993). "The contractual concept of 'meeting of the minds' or 'mutual assent' relates to the parties **having the same understanding of the terms of the agreement reached**." *Messer v. Huntington Anesthesia Group, Inc.*, 222 W.Va. 410, 418, 664 S.E.2d 751, 759 (2008) (emphasis added).

In the present case, the evidence of record shows no meeting of the minds existed in several ways. First, Plaintiff, through counsel, has already admitted that there was no meeting of the minds on all the terms of the agreement. This statement was made by Plaintiff's counsel at hearing held before this Court. *See* March 30, 2020 T.R.O. Hearing Transcript, attached as **Exhibit E**, at 43:14–20. Further, this can be demonstrated in Plaintiff's understanding of the terms of the agreement and the very existence of this lawsuit. Plaintiff has repeatedly insisted that the parties agreed the book would be "factual," but there was no agreement on what "factual" meant. This lack of a meeting of the minds on this key issue was demonstrated when the parties tried to create a written contract, only to discover that Plaintiff believed that "factual" meant he would have one hundred percent censorship rights over the book. Defendant, on the other hand, approached the term "factual" as a historian. As such, he understood that term to mean that the information presented in this book would be true, and that it could be substantiated—if possible, by using primary sources created at the time. This misunderstanding

5

of the term requiring the book be "factual" resulted in conflict, and eventually this litigation, between the parties. In West Virginia, a meeting of the minds requires the parties have the same understanding of the terms of the agreement. *See Messer*, 222 W. Va. at 418, 664 S.E.2d at 759. Because the parties here had different understanding of the term requiring that the book be factual,[3] there was no meeting of the minds. Therefore, Plaintiff's breach of contract claim fails.

Second, the absence of a meeting of the minds is evinced by the confusion over which term would control in the event of a conflict. Two of the terms identified by Plaintiff as central to the agreement between the parties is that the book be factual and that Plaintiff would be given the opportunity to review and approve of the language and content of the book. **Exhibit A** at 50:25–51:18. However, the parties never discussed what would happen if these two terms came into conflict. **Exhibit A** at 67:23–68:11. As shown by the claims in this suit, Plaintiff believed that if the two terms conflicted—and if Plaintiff's recollection did not match historical documentation—Plaintiff would have final say in whether to include the information in *Flamethrower*. Defendant, however, believed the most important thing is that the book be factual. This indicates no meeting of the minds over what the term factual meant—did factual mean, as Defendant believed, information verifiable through independent sources, or did what was considered "factual" depend on Plaintiff's approval? That conflict over the proposed terms indicates no meeting of the minds existed. Therefore, no enforceable contract exists and summary judgment should be granted in Defendant's favor.

---

[3] Despite the use of the word "factual," there is no issue of fact here. This argument prevails regardless of whether Plaintiff or Defendant was correct about whether any fact in the book was true or false. The truth or falsity of any information in the book is irrelevant to whether the parties had a meeting of the minds. Plaintiff believed "factual" meant he had complete censorship rights over the book, while Defendant believed factual meant supported through historical sources. No inquiry as to the truth or falsity of anything from the book is necessary for the court to rule on this purely legal issue.

Moreover, to the extent a valid, enforceable contract is found to exist, Plaintiff's claims fail under the doctrine of first breach. In West Virginia, the "party who commits the first breach of a contract is not entitled to enforce it, or to maintain an action thereon, against the other party for his subsequent failure to perform." *Standard Oil Co., Inc. v. Consolidation Coal Co.*, No. 15-0655, 2016 WL 6078570, at \*4 (W. Va. Oct. 17, 2016). Here, Plaintiff's alleged contracts contains a term that requires "[t]he information contained in the book would be factual as it related to Mr. Williams." Am. Verified Compl., (ECF No. 59), at ¶ 15(c). Nothing in this alleged term suggests this was a one-way obligation. In fact, Plaintiff repeatedly describes the work on the book as collaborative, suggesting mutual obligations. *See* (ECF No. 59), at ¶ 13, 20, 33, 45, 50, 56; *see also* **Exhibit A** at 64:19–65:1. Simply stated, Defendant was not the only party to the agreement who was obligated to ensure the book was factual—Plaintiff had the same obligation. When Plaintiff, or one of his representatives, demanded that information substantiated with historical documentation, as demonstrated by hundreds of footnotes citing to historical records—be removed from *Flamethrower*, Plaintiff violated any alleged agreement between the parties before Defendant made the decision to cut ties with Plaintiff. As such, Plaintiff cannot enforce the alleged oral contract and summary judgment in Defendant's favor should be granted.

## II.    Mr. Williams' Promissory Estoppel Claim Fails.

Plaintiffs claim for promissory estoppel fails. In order to establish a claim for promissory estoppel, a plaintiff must prove the following: "(1) a promise; (2) reasonable reliance on the promise by the plaintiff; (3) that it was foreseeable to the defendant that the plaintiff would rely on the promise; (4) that the plaintiff suffered damages as a result of her reasonable reliance upon the promise of the defendant; and (5) under a circumstance that injustice can only be avoided through enforcement of the promise." *Koerber v. Wheeling Island Gaming, Inc.*, No. 5:12CV97,

2013 WL 162669, at *4 (N.D.W. Va. Jan. 15, 2013). Significant factors in determining whether injustice can be avoided are "(a) the availability and adequacy of other remedies, particularly cancellation and restitution; (b) the definite and substantial character of the action or forbearance in relation to the remedy sought; (c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence; (d) the reasonableness of the action or forbearance; (e) the extent to which the action or forbearance was foreseeable by the promisor." *Everett v. Brown*, 174 W. Va. 35, 36, 321 S.E.2d 685, 686 (1984). Here, Mr. Williams promissory estoppel claim fails for three reasons. First, Mr. Williams has failed to identify any legally cognizable harm he has suffered as a result of *Flamethrower*'s publication. Second, it was not foreseeable that Mr. Williams would rely on an uncommon definition of "factual" to determine his own role in the project. Third and finally, Mr. Williams' promissory estoppel claim fails due to the doctrine of unclean hands.

Mr. Williams is not entitled to promissory estoppel because he has failed to establish any harm suffered. Per *Koerber*, it is necessary that a plaintiff suffer damages as an element of the claim. *See Koerber*, 2013 WL 162669 at *4. Throughout this litigation, Mr. Williams has made repeated overtures concerning the reputational harm the publication of *Flamethrower* will cause or has caused. However, Mr. Williams has yet to identify or describe any single measurable harm suffered, despite being asked to do so repeatedly through discovery. This is not limited to a failure to identify any reputational harm suffered. Mr. Williams has failed to present any evidence that he has suffered harm **at all**. Despite being asked in discovery to identify any communications about the claims made in the Complaint—including claims about his reputation— Mr. Williams has identified and provided none. Nor has Mr. Williams presented any evidence

8

that he has suffered other harm. In fact, other than this litigation—which Mr. Williams initiated himself—Plaintiff has endured no legally cognizable harm as a result of *Flamethrower*'s publication. Because Mr. Williams has suffered no legally cognizable harm, he cannot maintain his claim for promissory estoppel, and summary judgment in Mr. Rigg's favor is appropriate.

Moreover, Mr. Williams is not entitled to promissory estoppel because it was not foreseeable that he would rely on an abnormal definition of "factual" or that Mr. Williams would insist factual material be removed from the book. Merriam-Webster defines factual as "of or relating to facts" or "restricted to or based on fact." https://www.merriam-webster.com/dictionary/factual. "Fact," as used in this definition, means "something that has actual existence" or "an actual occurrence." https://www.merriam-webster.com/dictionary/fact. Similarly, the Oxford English Dictionary defines the word "factual" as "based on or containing facts." https://www.oxfordlearnersdictionaries.com/us/definition/english/factual. According to the same dictionary, a "fact" is "a thing that is known to be true, especially when it can be proved." https://www.oxfordlearnersdictionaries.com/us/definition/english/fact. These are the commonly understood definitions of what it means to be factual, and Defendant was relying on these definitions when discussing a potential agreement with Plaintiff.

Plaintiff, however, relied on a different understanding of the word factual. Under the definition relied on by Plaintiff, the requirement that the book be "factual"—a requirement imposed on both parties—meant that Plaintiff would be allow to remove any information from the book that he wanted, whether it was supported by documentation or not. This differs from the common understanding of the word and is therefore unforeseeable. Moreover, it was unforeseeable that despite Mr. Williams' agreement that the book be factual, that Mr. Williams would insist that factual information—supported by historical documentation—be removed from

9

the book. In short, at the very outset of the relationship between Mr. Williams and Mr. Rigg, Mr. Williams insisted that the book be factual. It simply was not foreseeable Mr. Williams would object to the inclusion of factual, verifiable information in *Flamethrower* considering the emphasis Mr. Williams put on the requirement. As such, Plaintiff's claim for promissory estoppel fails.

Indeed, as a matter of law, based on the admissions of the Plaintiff, the court can find that no reliance on the alleged oral promises occurred. The testimony at the TRO hearing on April 6, 2020 demonstrates that although Brent Casey was negotiating terms with Mr. Rigg for his grandfather, he had no authority to reach an agreement on Mr. Williams' behalf, and no agreement was ever reached. Ex. A. p. 21. Mr. Williams testified about an executed contract, but he admitted in his testimony that it was never returned to Mr. Rigg, and indeed nobody saw it prior to the April 6, 2020 hearing. Ex. A, p. 72 7-16. Plaintiff knew a written agreement was necessary, as he testified:

> I felt that we needed to come to some kind of an agreement where we both signed something. But I – I was in business for a number of years. That was one of the things that I stipulated and, fortunately, of course, in my business, when we came to an agreement, we would sign something to say we were agreeing.

Ex. A, p. 57. Based on the Plaintiff's admission that he was aware a signed agreement was necessary in this case, the court can grant summary judgment on the promissory estoppel claim, as the Plaintiff was aware that the alleged oral promises were not legally enforceable.

Further, Plaintiff's promissory estoppel claim is barred by the doctrine of unclean hands. In West Virginia, "it is axiomatic that one who seeks equity must have clean hands." *St. Luke's United Methodist Church v. CNG Dev. Co.*, 222 W. Va. 185, 193, 663 S.E.2d 639, 647 (2008). Under the "unclean hands" doctrine, "whenever and if it is made to appear to the court that by

reason of . . . unconscionable conduct, the plaintiff has lost his right to invoke a court of equity, the court will, on the motion of a party . . . wash its hands of the whole." *Hassan G. v. Tamra P.*, 853 S.E.2d 577, 585 (W. Va. 2020). Here, Mr. Williams cannot recover because he has unclean hands. The alleged promises identified by Mr. Williams as having been broken by Mr. Rigg include mutual obligations which Mr. Williams first failed to meet. Again, the terms of the agreement, whether an oral contract or a promise, indicate that both parties agreed to make *Flamethrower* factual. When Mr. Williams told Mr. Rigg he could not include factually accurate material in the book, Mr. Williams broke his own promise to make sure the book was factual. As such, Mr. Williams has unclean hands and cannot pursue relief in equity. Summary judgment should be granted in Mr. Rigg's favor.

## III.  Statute of Frauds Prohibits Both Breach of Contract Claim and Promissory Estoppel Here.

As discussed in more detail in Defendants' Memorandum in Support of Motion to Dismiss Amended Verified Complaint (ECF 34), and Defendants' Reply in Support of Memorandum in Support of Motion to Dismiss Amended Verified Complaint (ECF 105), Plaintiffs claims are barred by the statute of frauds which requires any contract not capable of performance within one year to be in writing. *See, e.g.*, W. VA. CODE § 55-1-1(f), and other sources cited in ECF 34 and 105.[4] Plaintiff alleges that Plaintiff and Defendant would share in the proceeds of the book, a term indefinite in timing. Courts find that terms like that fall under the statute of frauds. *See Grossberg v. Double H. Licensing Corp.*, 86 A.D. 2d 565 (N.Y. App. 1982), and other

---

[4] These statute of frauds arguments have been addressed in a more fulsome matter in the parties' previous briefing on the Motion to Dismiss the Amended Complaint.  Rather than restate the forty-eight pages of briefing on those issues those arguments again, Defendant adopts those arguments and authority by reference here and instead presents this shorter summary of the argument. Should the Court desire to have a more full discussion of these issues, Defendant is happy to provide either in writing or at oral argument.

sources cited in ECF 34 and 105.  Further, Plaintiffs' promissory estoppel claim fails because the alleged "promise" is identical to the terms of the alleged oral agreement and the performance requested is that Plaintiff maintain one hundred percent censorship rights over the book, a term Plaintiff claims was part of the alleged oral contract.  Under West Virginia law, a litigant cannot escape the application of the statute of frauds when the promise is identical to a term of the alleged oral contract.  *Long v. Long*, No. 11-0865, 2012 W. Va. LEXIS 445 (June 8, 2012). Additionally, despite recognizing an exception for real estate contracts in certain situations, West Virginia does not recognize any exceptions to the statute of frauds when the contract could not be performed within a year.  *See Kimmins v. Oldham*, 27 W. Va. 258, 265 (1885) (if a contract is barred by the statute of frauds for inability to be performed within a year, a plaintiff cannot revive the contractual promise even if the plaintiff performed under the contract.).  As a result, neither the breach of contract claim nor the promissory estoppel claim survive the application of the statute of frauds.

WHEREFORE, for the foregoing reasons, Defendant Bryan Mark Rigg respectfully request this Court enter an order granting summary judgment in his favor, and for any other relief the Court deems just.


Respectfully submitted,

  /s/ Thomas M. Hancock
Thomas M. Hancock (WV Bar No. 10597)
Alexander C. Frampton (WV Bar No. 13398)
**NELSON MULLINS RILEY &**
**SCARBOROUGH LLP**
949 Third Ave., Suite 200
Huntington, WV 25701
Phone: (304) 526-3500
Email: tom.hancock@nelsonmullins.com
Email: alex.frampton@nelsonmullins.com

**And**

Geoffrey Scott Harper (*pro hac vice* forthcoming)
**WINSTON & STRAWN LLP**
2121 N. Pearl St., Suite 900
Dallas, TX 75201
Phone: (214)453-6476
Email: gharper@winston.com
**COUNSEL FOR DEFENDANT BRYAN MARK RIGG**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON**

HERSHEL WOODROW "WOODY"
WILLIAMS,

                              Plaintiff,

                                      Civil Action No.  3:19-CV-00423
v.                                   Honorable Judge Johnston

BRYAN MARK RIGG, an individual;
STACKPOLE, INC., a Pennsylvania
Corporation; and THE ROWMAN &
LITTLEFIELD PUBLISHING GROUP,
INC., a Delaware Corporation,

                              Defendants.

## CERTIFICATE OF SERVICE

       The undersigned attorney hereby certifies that a true and correct copy of the foregoing

***"Bryan Mark Rigg's Memorandum in Support of Motion for Summary Judgment"*** was served

via the CM/ECF system on the 21st day of July, 2021, which will send notice to the following

participants:

                 J.H. Mahaney
                 Brittany S. Given
                 Dinsmore & Shohl LLP
                 611 Third Avenue
                 Huntington, WV 25701


  /s/ Thomas M. Hancock
Thomas M. Hancock (WV Bar No. 10597)
Alexander C. Frampton (WV Bar No. 13398)
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
949 Third Ave., Suite 200
Huntington, WV 25701
Phone: (304) 526-3500
Email: tom.hancock@nelsonmullins.com
Email: alex.frampton@nelsonmullins.com

**And**

Geoffrey Scott Harper (*pro hac vice* forthcoming)
**WINSTON & STRAWN LLP**
2121 N. Pearl St., Suite 900
Dallas, TX 75201
Phone: (214) 453-6476
Email: gharper@winston.com