IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

HERSHEL WOODROW WILLIAMS,

        Plaintiff,

v.                                      CIVIL ACTION NO.   3:19-cv-00423

BRYAN MARK RIGG, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Bryan M. Rigg's second Motion to Dismiss.[1] (ECF No. 33.) For the reasons discussed more fully below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion.

I.    BACKGROUND

This case arises out of an alleged oral contract dispute between Plaintiff Hershel Woodrow Williams ("Plaintiff" or "Williams") and Defendants Bryan Mark Rigg ("Defendant" or "Rigg"), Stackpole, Inc., and The Rowman & Littlefield Publishing Group, Inc. over the publication of a book. On March 20, 2020, during the pendency of this lawsuit, Rigg self–published the book in controversy entitled *Flamethrower: Iwo Jima Medal of Honor Recipient and U.S. Marine Woody Williams and His Controversial Award, Japan's Holocaust and the Pacific War*

---

[1] Also pending is Defendant's first Motion to Dismiss. (ECF No. 8.) After the first Motion to Dismiss was filed, the Court granted Plaintiff's motion to amend his complaint, and the Amended Complaint was entered on the docket on January 23, 2020. Accordingly, Defendant's first Motion to Dismiss, (ECF No. 8), is **DENIED AS MOOT**.

1

("*Flamethrower*"). (ECF No. 47 at 4.) This book is currently being offered for sale on Amazon.com. (*Id.*)

Williams is a Congressional Medal of Honor recipient, so earned for his heroism during the Battle of Iwo Jima in World War II, and a well–known public figure who makes frequent public appearances and has been interviewed for numerous articles. (ECF No. 59 at 3, ¶ 10.) The parties first met in 2015, while accompanying other veterans on a tour of Guam and Iwo Jima. (*Id.* ¶ 12.) After this initial introduction, Plaintiff states the parties had several discussions concerning the possibility of collaborating to write Williams' biography. (*Id.* ¶ 13.) However, Rigg, a historian and author, states he had already decided to write a book about the Pacific campaign of World War II prior to the parties' initial introduction. (ECF No. 34 at 3.) He states he had traveled to Guam and Iwo Jima as part of this research, and then, after meeting Williams, decided to incorporate Williams in the book as a vehicle to tell the stories of all servicemen who fought in the Pacific campaign. (*Id.*)

In July of 2016, Rigg visited West Virginia, where Williams was born and still resides, and met with Williams and his family to gather personal details about Williams' life. (ECF No. 59 at 4, ¶ 14.) On February 12, 2017, Rigg returned to West Virginia to meet again with Williams and his representatives at the Holiday Inn hotel in Barboursville, West Virginia, where Plaintiff alleges the parties discussed the terms of their collaboration. (*Id.* ¶ 15.) Plaintiff contends the parties both agreed to the following:

1. Mr. Williams would provide Defendant Rigg with personal information about his life and his military service;

2. Defendant Rigg would conduct research as necessary for the book and prepare a draft manuscript of the book;

2

   3. The information contained in the book would be factual as it related to Mr. Williams;

   4. Mr. Williams, along with Defendant Rigg, would have input into, and authority over, the text and content of the book; and

   5. Mr. Williams and Defendant Rigg would share equally in any proceeds from the book.

(*Id.*)  Based on this alleged agreement, Williams provided Rigg with information, including untold stories and sentimental items, which Rigg used to prepare drafts of the book.  (*Id.* ¶ 19.)

During the writing process, Rigg shared drafts of the book with Williams, and Williams in turn would provide suggested edits and revisions.  (*Id.* at 6, ¶ 21.)  Toward the end of 2017, the parties attempted to draft a written contract to memorialize the alleged oral agreement.  (*Id.* at 7, ¶ 23.)  Over the course of a year, the parties, through Williams' representatives, exchanged numerous drafts of this proposed written contract, but were ultimately unable to reach an agreement.  (*Id.* ¶¶ 24–25; ECF No. 34 at 6.)  Thereafter, the relationship between the parties began to deteriorate due to both parties' dissatisfaction with the failed written contract.  (ECF No. 59 at 8, ¶ 27.)  After this breakdown in communication, Williams became aware of additions to the manuscript which called into question his military actions during the Battle of Iwo Jima and the legitimacy of his Medal of Honor.  (*Id.* at 8–9, ¶ 31.)  Plaintiff alleges these statements are "defamatory and misleading."  (*Id.*)  Plaintiff then requested the return of his personal materials, including handwritten journals, photographs, and any other materials provided to Defendant and also demanded that Defendant refrain from any unauthorized use of any drafts of the book that Plaintiff had not approved.  (*Id.* at 9, ¶ 32–33.)  Further, Plaintiff revoked his consent for Defendant to use his name, likeness, image, personal stories, etc., in connection with the book.  (*Id.* ¶ 34.)  Plaintiff alleges that Defendant refused to return Plaintiff's personal materials and went

3

ahead with the publication of the book without Plaintiff's permission and without allowing Plaintiff the opportunity to review and comment on any further drafts. (*Id.* at 10, ¶¶ 35–36.)

In addition, on March 21, 2020, Plaintiff filed his Amended Motion for Entry of Temporary Restraining Order requesting that this Court enter both a temporary restraining order and a preliminary injunction enjoining Defendant from the "dissemination, distribution, selling, offering for sale and/or publication" of his book *Flamethrower* as well as any other book or future work based upon the life of Williams. (ECF No. 47 at 5.) In a Memorandum Opinion and Order entered on May 4, 2020, this Court found that Plaintiff's request would constitute an unconstitutional prior restraint in violation of the First Amendment of the United States Constitution and denied Plaintiff's motion. (ECF No. 73 at 18–19.)

On February 4, 2020, Defendant filed the pending Motion to Dismiss. (ECF No. 33.) Plaintiff filed a response, (ECF No. 102), and Defendant replied, (ECF No. 105). As such, this motion is fully briefed and ripe for adjudication.

## II.   LEGAL STANDARDS

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In applying this standard, a court must utilize a two-pronged approach. First, it must separate the legal conclusions in the complaint from the factual allegations. *Ashcroft v. Iqbal*,

4

556 U.S. 662, 678 (2009). Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.* Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

### III. DISCUSSION

Plaintiff's Amended Complaint alleges the following six causes of action: Count I for a temporary restraining order and preliminary and permanent injunction to enforce oral agreement against all Defendants; Count II for breach of oral contract against Rigg; Count III for promissory estoppel/detrimental reliance against Rigg; Count IV for conversion of an idea against Rigg; Count V for joint venture against all Defendants; and Count VI interference with the right of publicity against all Defendants. (ECF No. 59.) Defendant challenges all six counts. Each argument is addressed in turn.

#### A. *Injunctive Relief*

Defendant challenges Plaintiff's Count I claim for injunctive relief on the basis that injunctive relief is a remedy and not an independent cause of action. (ECF No. 34 at 25.) Plaintiff has alleged a claim for both a preliminary and permanent injunction against all Defendants. (ECF No. 59 at 11.) However, Plaintiff did not respond to this argument in his

response. Thus, this argument is uncontested, and the Court considers Plaintiff's failure to respond as a waiver of this claim. Accordingly, Plaintiff's Count I claim for a temporary restraining order and preliminary injunction against all Defendants is **DISMISSED**.

   B. *Breach of Contract*

Next, Defendant argues Plaintiff's breach of contract claim is barred under the statute of frauds. (ECF No. 34 at 10.) To establish a claim for breach of contract, a party must prove the following four elements: "(1) that a valid, enforceable contract exists; (2) that the plaintiff has performed under the contract; (3) that the defendant has breached or violated its duties or obligations under the contract; and (4) that the plaintiff has been injured as a result of a breach." *Remsberg v. Docupak*, No. 3:12-CV-41, 2013 WL 704657, at *6 (N.D. W. Va. Feb. 27, 2013) (citing *Executive Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F.Supp.2d 694, 714 (S.D. W. Va. 2009)). Here, the parties do not dispute that the alleged contract is an oral contract. (ECF No. 59 at 14, ¶ 50.) Further, Defendant does not argue that Plaintiff failed to state a claim for breach of contract but instead argues that Plaintiff's claim is barred under the statute of frauds because the alleged oral contract could not be performed in one year. (ECF No. 34 at 12.)

The Statute of Frauds makes "the establishment of perjured and fraudulent claims difficult by foreclosing enforcement of certain kinds of contracts." *Yanero v. Thompson*, 342 S.E.2d 224, 226 (W. Va. 1986). The West Virginia Statue of Frauds states:

[n]o action shall be brought . . .

  (f) [u]pon any agreement that is not to be performed within a year . . .

Unless the offer, promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged thereby or his agent. But the consideration need not be set forth

or expressed in the writing; and it may be proved (where a consideration is necessary) by other evidence.

W. Va. Code § 55–1–1(f). In order to avoid application of the Statute of Frauds, the plaintiff must establish by clear and convincing evidence that the contract did exist. *Yanero*, 342 S.E.2d at 225. The existence of that contract can be proven by "circumstantial evidence, apparent reliance, similar practices in the industry or anything else that would convince the court that the defendant was not being subjected to an utterly spurious claim." *Id.* Further, "[i]t is only necessary that the contract be capable, by reasonable construction, of full performance by one side within a year in order to remove it from the statute of frauds." *Yanero*, 342 S.E.2d at 226. "[I]f an oral contract may, in any possible event, be fully performed according to its terms within a year, it is not within this subdivision of the statute of frauds . . . ." *Thompson v. Stuckey*, 300 S.E.2d 295, 298 (W. Va. 1983).

In addition, "affirmative defenses, such as the statute of frauds, may be raised in a Rule 12(b)(6) motion to dismiss, but for dismissal to be allowed on the basis of an affirmative defense, the facts establishing the defense must be clear on the face of the plaintiff's pleadings." *Koontz v. Wells Fargo, N.A.*, No. 2:10-CV-00864, 2011 WL 1297519, at *9 (S.D. W. Va. Mar. 31, 2011) (internal quotations omitted). "A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint; it typically 'does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Long v. Nationstar Mortg. LLC*, No. 2:15-CV-01202, 2016 WL 1229107, at *3 (S.D. W. Va. Mar. 28, 2016) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). "It follows, therefore, that a motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense . . . ." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir.

2007). Finally, it is a "relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint . . . ." *Id.*

Here, it is undisputed that there was no signed writing executed by the parties. However, the parties dispute whether the oral contract may be fully performed under its terms in one year. Specifically, Defendant argues that the contract could not have been performed within one year because the Amended Complaint states that both Williams and Rigg "would share equally in any proceeds from the book." (ECF No. 59 at 4, ¶ 15.) Plaintiff argues that this term is not the same as a book royalty agreement of an indefinite duration and that this term could be performed within one year. (ECF No. 102 at 9–10.)

The Amended Complaint does not allege that the parties contemplated that the contract would be performed within a year and there is no further information in the Amended Complaint about the parties' intention in relation to this term. Further, as this Court has previously discussed in both *Koontz* and *Long*, the statute of frauds is an affirmative defense and "the facts establishing the defense must be clear on the face of the plaintiff's pleadings." *Koontz*, 2011 WL 1297519, at *9. The Amended Complaint does not contain sufficient information to allow this Court to determine how long the parties intended this payment structure to continue. Thus, this case is not one of the "relatively rare" cases in which the facts sufficient to rule on an affirmative defense are alleged in the complaint and further information is required to determine if the statute of frauds applies to this alleged oral contract. *Goodman.*, 494 F.3d at 464. Accordingly, Defendant's motion to dismiss Count II for breach of contract is **DENIED**.

### C. Promissory Estoppel

8

Defendant argues Plaintiff's promissory estoppel claim fails because it is precluded by the statue of frauds. (ECF No. 105 at 6.) Specifically, Defendant argues that the statute of frauds precludes this claim because the alleged promise is identical to the alleged oral agreement and because the performance exception to the statute of frauds does not apply when the promise fails under the statute of frauds because it cannot be completed within one year. In West Virginia, a promissory estoppel claim requires the plaintiff to prove the following:

> (1) a promise; (2) reasonable reliance on the promise by the plaintiff; (3) that it was foreseeable to the defendant that the plaintiff would rely on the promise; (4) that the plaintiff suffered damages as a result of her reasonable reliance upon the promise of the defendant; and (5) under a circumstance that injustice can only be avoided through enforcement of the promise.

*Koerber v. Wheeling Island Gaming, Inc.*, No. 5:12CV97, 2013 WL 162669, at *4 (N.D. W. Va. Jan. 15, 2013) (citing *Everett v. Brown*, 321 S.E.2d 685 (W. Va. 1984)). The West Virginia Supreme Court of Appeals has held on multiple occasions that a claim for promissory estoppel can exist "notwithstanding the Statute of Frauds." Syl. Pt. 1, *Everett*, 321 S.E.2d 685; *see also Hoover v. Moran*, 662 S.E.2d 711, 719 (W. Va. 2008) (holding that "under the doctrine of promissory estoppel, [Plaintiff] should have his day in court notwithstanding the possible application of the statute of frauds writing requirement . . .").

Just like the breach of contract claim, Defendant moves to dismiss Plaintiff's promissory estoppel claim under the statute of frauds. As stated above, the Amended Complaint does not contain sufficient information to allow this Court to determine if the statue of frauds precludes Plaintiff's breach of contract claim and the same analysis applies here. "[T]he facts establishing the defense must be clear on the face of the plaintiff's pleadings" and that is not the case here. *Koontz*, 2011 WL 1297519, at *9. Rule 12(b)(6) tests the sufficiency of the complaint, and the

Amended Complaint does not contain enough information to allow this Court to determine the merits of Defendant's statute of frauds defense at this stage of the proceeding. Accordingly, Defendant's motion to dismiss Count III for promissory estoppel is **DENIED**.

### D. Joint Venture

Next, Defendant argues Plaintiff has failed to allege factual allegations to support his claim for joint venture. (ECF No. 34.) Plaintiff failed to respond to this argument in his response. (*See generally* ECF No. 102.) "Under West Virginia law, joint venture is an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, [efforts], skill and knowledge." *Croye v. GreenPoint Mortg. Funding, Inc.*, 740 F. Supp. 2d 788, 799 (S.D. W. Va. 2010) (internal quotations omitted). Further, "a joint venture arises out of a contractual relationship between the parties. The contract may be oral or written, express or implied." *Id.* (quoting *Price v. Halstead*, 355 S.E.2d 380, 384 (W. Va. 1987). In addition,

> [i]n ascertaining the existence of a joint venture, one looks for (1) a contract between the joint venturers establishing their relationship, (2) a combination by them of property, money, efforts, skill, or knowledge, in some common undertaking of a special or particular nature, (3) a design to share profits and, perhaps, losses, and (4) the exercise of control over the joint venture by the participants.

*Proffitt v. Greenlight Fin. Servs.*, No. CIV.A.2:09-1180, 2011 WL 1485576, at *4 (S.D. W. Va. Apr. 19, 2011)

Here, Plaintiff offers no factual allegations in support of this claim. Plaintiff alleges broadly that "Defendants Stackpole and Rowman and Littlefield are engaged in a joint venture with Defendant Rigg for intended profit for the sale and distribution of *Flamethrower: Medal of Honor Recipient Woody Williams, Iwo Jima, and World War II in the Pacific* using Mr. Williams'

story, name, and likeness without his consent." (ECF No. 59 at 19, ¶ 72.) Plaintiff does not allege there was a contract between the alleged joint venturers, a combination by them, or that there was an exercise in the control of the joint venture by these participants. In addition to his failure to provide any factual allegations in support of this claim, Plaintiff has failed to even provide a formulaic recitation of all the required elements of this cause of action. Accordingly, Plaintiff's Count V claim for joint venture is **DISMISSED** for failure to state a claim as to all Defendants.

### E. Interference with the Right of Publicity and Conversion of an Idea

Plaintiff's Amended Complaint alleges a Count IV claim for conversion of an idea and a Count VI claim for interference with the right of publicity. Defendant argues Plaintiff has failed to state a claim because West Virginia does not recognize either of these causes of action. (ECF No. 34 at 19, 22.) However, Plaintiff has agreed to withdraw both claims because this Court had sought to certify both causes of action to determine if they were cognizable causes of action under West Virginia law. (ECF No. 102 at 4.) Accordingly, Plaintiff's Count IV claim for conversion of an idea and Count VI claim for interference with the right of publicity are **DISMISSED** against all Defendants.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant Bryan M. Rigg's second Motion to Dismiss. (ECF No. 33.) For clarity, the Court summarizes its holding as follows: Count I for a temporary restraining order and preliminary and permanent injunction to enforce oral agreement against all Defendants is **DISMISSED**; Count IV for conversion of an idea against Rigg is **DISMISSED**; Count V for joint venture against all

Defendants is **DISMISSED**; and Count VI interference with the right of publicity against all Defendants is **DISMISSED**. Only Plaintiff's Count II for breach of oral contract against Rigg and Count III for promissory estoppel/detrimental reliance against Rigg remain.

Further, all claims against Defendants the Stackpole, Inc., and The Rowman & Littlefield Publishing Group, Inc. have been dismissed. Accordingly, the Court **DIRECTS** the Clerk to remove Defendants the Stackpole, Inc., and The Rowman & Littlefield Publishing Group, Inc. as parties to this action.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 9, 2021

_____
THOMAS E. JOHNSTON, CHIEF JUDGE